**Sheryl MURRAY and William Murray, Respondents,**

v.

**Georgine Banks WALTER, Defendant and Third Party Plaintiff, Appellant,**

v.

**Joseph BESSARD, Third Party Defendant, Respondent,**

v.

**Joan BESSARD, Intervenor, Respondent.**

No. 48012.

Supreme Court of Minnesota.

July 21, 1978.

Coulter, Nelson, Sullivan & Frevert and Tracy Hicks, Minneapolis, for appellant.

Charles Rubenstein, Minneapolis, for respondents Sheryl Murray and William Murray.

O'Connor & Hannan and James A. Rubenstein, Minneapolis, for respondents Joseph Bessard and Joan Bessard.

Faegre & Benson and John B. Gordon, Minneapolis, for respondent Joseph Bessard.

Heard before ROGOSHESKE, PETERSON, and SCOTT, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

This negligence action arises from an automobile accident which occurred shortly after the effective date of Minnesota's No-Fault Automobile Insurance Act, Minn.St. 65B.41 to 65B.71. Plaintiff, Sheryl Murray, was a passenger in an automobile driven by third-party defendant, Joseph Bessard, which was struck from behind by an automobile driven by defendant, Georgine Walter. Following a jury trial in district court, judgment was entered for plaintiff and her husband and for Bessard and his wife. On appeal from the denial of post-trial motions defendant raises three issues. Two of the issues relate to evidentiary matters; the third, and more important, issue is whether Bessard satisfied one of the threshold requirements of § 65B.51, subd. 3, a provision of the No-Fault Automobile Insurance Act.

There was trial testimony that the morning after the accident plaintiff consulted Dr. Thomas Johnson, a physician, who diagnosed a myofascial injury to the neck and back and a traumatic umbilical hernia. Plaintiff was eventually hospitalized and underwent surgery for repair of the hernia. Johnson testified that as a result of injuries received in the accident plaintiff had suffered "a permanent partial disability of 15 percent of her back."

Bessard testified that he consulted Dr. Johnson 2 days after the accident. Dr. Johnson diagnosed a myofascial injury to the neck and back and a traumatic inguinal hernia. Johnson testified that as a result of the accident Bessard suffered "permanent injury," which he described as a 15-percent permanent partial disability of the back, similar to plaintiff's condition.

The jury found by special verdict that defendant was 100-percent causally negligent and assessed damages for plaintiff and her husband of $11,002.75 and for Bessard and his wife of $7,294.

1. The first issue concerns the trial court's exclusion of certain testimony. The court initially admitted (1) testimony by Dr. Johnson that he had diagnosed traumatic

hernias caused by automobile accidents in seven patients in addition to plaintiff and Bessard, and (2) testimony by Dr. Thomas Comfort, an orthopedic surgeon testifying for defendant, that traumatic hernias are not commonly caused by automobile accidents. The trial court later concluded that Johnson's testimony concerning the seven other patients was irrelevant, and the court instructed the jury not to consider it. However, the court did not, as defendant contends, exclude Comfort's testimony. Defendant was thus free to argue to the jury, on the basis of Comfort's testimony, that Johnson was erroneous in his opinion that plaintiff and Bessard had suffered traumatic hernias as a result of the accident. In these circumstances, it was not an abuse of discretion for the trial court to exclude as irrelevant the evidence concerning Johnson's seven other patients.

2. The second issue concerns cross-examination of Dr. Johnson. In chambers, defendant stated on information and belief that after Johnson had been licensed as a physician there was a 2-year period in early 1960 when he did not practice medicine. Defendant's counsel argued that the circumstances surrounding this period impeached Johnson's present status and credibility as a medical expert. Thus counsel sought permission to inquire on cross-examination concerning the details of the 2-year period. The trial court denied this request on the ground that the period was some 12 to 15 years past. On appeal, defendant argues that the trial court's ruling improperly limited the scope of cross-examination of an adverse medical expert.

No firm rule can be laid down that will determine the proper limits of cross-examination in all cases. The circumstances of each case must control, and it is largely for this reason that the manner and scope of cross-examination is left to the discretion of the trial court, which will be reversed only for abuse of discretion. *Boutang v. Twin City Motor Bus Co.*, 248 Minn. 240, 80 N.W.2d 30 (1956); *Mattfeld v. Nester*, 226 Minn. 106, 32 N.W.2d 291 (1948). In general, however, a wide range of inquiry should be allowed on cross-examination of expert witnesses for the vital purpose of testing the weight to be accorded to their testimony. *Boutang v. Twin City Motor Bus Co. supra*; *Mattfeld v. Nester, supra*. In this case, the better course would have been to allow more detailed cross-examination. Although the 2-year period in question was some 12 to 15 years past, more detailed cross-examination might have been helpful to a full airing of defendant's view of the case and thorough testing of Dr. Johnson's credibility. We cannot say, however, that the trial court's limitations on cross-examination were an abuse of discretion constituting reversible error.

3. The third issue relates only to the recovery by Bessard and his wife on their counterclaim against defendant. Because the Bessards' counterclaim presents a "cause of action in negligence accruing as a result of injury arising out of the operation, ownership, maintenance or use of a motor vehicle" within the meaning of § 65B.51, subd. 1, their counterclaim is subject to the threshold requirements of the no-fault insurance act which are laid down by § 65B.51, subd. 3.[1] Subdivision 3 provides

---

1. Minn.St. 65B.51, subd. 3, provides in part: "In an action described in subdivision 1, no person shall recover damages for noneconomic detriment unless:

"(a) The sums of the following exceeds $2,000:

"(1) Reasonable medical expense benefits paid, payable, or payable but for any applicable deductible, plus

"(2) The value of free medical or surgical care or ordinary and necessary nursing services performed by a relative of the injured person or a member of his household, plus

"(3) The amount by which the value of reimbursable medical services or products exceeds the amount of benefit paid, payable, or payable but for an applicable deductible for those services or products if the injured person was charged less than the average reasonable amount charged in this state for similar services or products, minus

"(4) The amount of medical expense benefits paid, payable, or payable but for an applicable deductible for diagnostic X-rays and for a procedure or treatment for rehabilitation and not for remedial purposes or a course of rehabilitative occupational training; or

that in an action described by subd. 1, "no person shall recover damages for non-economic detriment" unless they satisfy one of a number of alternative threshold requirements: Reasonable medical expenses exceeding $2,000, permanent disfigurement, permanent injury, death, or disability for 60 days or more.

A commentary written shortly after the no-fault insurance act took effect suggests that in cases coming under the act the party seeking recovery has the burden of pleading and proving facts which satisfy one of the subd. 3 thresholds. Steenson, 2 Wm. Mitchell L.Rev. 109, 154. Where there is an issue raised as to whether the threshold requirements were satisfied, commentators believe the question should be submitted to the jury as a part of the special verdict.[2] We are in accord with those views.

In the present case the Bessards pled in their counterclaim that Bessard suffered "permanent injuries, including but not limited to permanent injury to his neck and back." Thus there clearly were facts alleged which satisfied the "permanent injury" threshold of subd. 3. The Bessards also met, by means of Dr. Johnson's testimony, their burden of proving "permanent injury."

On the other hand defendant, in reply to the Bessards' counterclaim, did not raise any issue involving the subd. 3 thresholds. Nor did defendant raise the issue at trial or in the formulation of the special verdict. Thus the special verdict submitted to the jury did not ask whether Bessard had suffered "permanent injury." It was not until

post-trial motions that defendant argued that the Bessards had failed to satisfy the threshold requirements of subd. 3. The trial court correctly held in these circumstances that defendant waived the issue of whether the opposing party had satisfied one of the threshold requirements of the statute.

On appeal, defendant argues that the threshold requirements of § 65B.51, subd. 3, limit the district court's subject matter jurisdiction and that in the absence of a special verdict finding of permanent injury the trial court lacked jurisdiction to order judgment for the Bessards. We disagree. The threshold requirements in § 65B.51, subd. 3, are not limitations on the trial court's subject matter jurisdiction. The thresholds are, in effect, an additional element of the cause of action described in subd. 1 which must be pled and proved to recover a particular type of damages (damages for non-economic detriment).

In this case Bessard pled and proved facts which satisfied one of the threshold requirements. Defendant had the option of contesting this factual element of Bessard's case, but did not do so either at trial or when the special verdict was formulated. Defendant did not ask that the issue of whether Bessard had suffered permanent injury be submitted to the jury. Rule 49.-01, Minnesota Rules of Civil Procedure, governs special verdicts. It provides in part:

"* * * If in so doing [formulating the special verdict and instructing the jury] the court omits any issue of fact raised by the pleadings or by the evi-

"(b) The injury results in:
"(1) permanent disfigurement;
"(2) permanent injury;
"(3) death, or
"(4) disability for 60 days or more.
"(c) For the purposes of clause (a) evidence of the reasonable value of medical services and products shall be admissible in any action brought in this state."

**2.** Hvass, "The Nuts and Bolts of No-Fault," 43 Hennepin Lawyer 12, 15 (March-April 1975):
"Since the plaintiff has the burden of proving that the condition precedent for commencement of a claim for non-economic detriment damages exists (M.S.A. § 65B.51, Subd. 3), the

court will probably submit the following interrogatories to the jury in addition to the usual interrogatories on negligence and causation:
"Did plaintiff incur reasonable medical expense in excess of $2,000?
"Yes _____ No _____
"Did plaintiff sustain permanent disfigurement?
"Yes _____ No _____
"Did plaintiff sustain permanent injury?
"Yes _____ No _____
"Did plaintiff sustain disability for 60 days or more?
"Yes _____ No _____"

dence, each party waives his right to a trial by jury of the issues so omitted unless before the jury retires he demands its submission to the jury. *As to an issue omitted without such demand, the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."* (Italics supplied.) The trial court, by ordering entry of judgment for the Bessards, in effect found, upon the evidence, that permanent injury had occurred.

Affirmed.