**Richard COUGHLIN, et al., Appellants,**

**v.**

**Kenneth Roy LaBOUNTY and LaBounty Manufacturing, Inc., Respondents.**

**No. C2–84–591.**

Court of Appeals of Minnesota.

Aug. 28, 1984.

H.L. Newby, Jr., Jean M. Klosowski, Cloquet, for appellants.

Anthony S. Downs, Steven W. Schneider, Duluth, for respondents.

Heard, considered, and decided by LANSING, P.J., and WOZNIAK and FORSBERG, JJ.

## OPINION

WOZNIAK, Judge.

The plaintiff seeks to recover noneconomic losses over and above his no-fault benefits by suing the driver who hit him. The jury found that the plaintiff had sustained $25,000 worth of damages, but was not permanently injured or disabled for sixty days or more. The trial court ruled that the thresholds of the No-Fault Act had not been met and entered judgment for the defendant. The plaintiff moved for a new trial, but the motion was denied and the

judgment entered. The plaintiff appeals. We affirm.

## FACTS

Richard Coughlin's car was rear-ended by a vehicle driven by Kenneth LaBounty and owned by LaBounty Manufacturing, Inc. LaBounty admitted liability for the accident. This action is concerned only with damages.

The parties hotly disputed the issue of damages. LaBounty's expert, Dr. Budd, unequivocally rejected Coughlin's claim of permanent injury; Coughlin's expert, Dr. Pollard, just as unequivocally claimed the injuries were permanent.

The trial court instructed the jury on permanent injury and on the meaning of disability for 60 days.

A special verdict form was submitted to the jury. The jury found that Richard Coughlin had been damaged in the amount of $25,170, of which $4,170 represented income loss from the day of the accident through trial, almost three years. Medical expenses incurred up to the time of trial were stipulated to be $3,200. Colleen Coughlin's damages were set at $3,850. The jury found specifically, however, that Richard Coughlin had neither sustained a permanent injury nor was he disabled for more than sixty days. The trial court summed up the jury's findings:

> Armed with that knowledge [the jury instructions], and armed with the evidence which had been presented to it, the jury simply rejected the claims of the Plaintiff Coughlin on those two issues and the Court perceives no reason that it should substitute its judgment on those disputed matters for the judgment of the jury.

Coughlin had been a school teacher, and continued to work as a school teacher after the accident. Though he was later laid off his teaching job, it is undisputed that his layoff was because of a decline in enrollment, not his injuries.

The number of sick leave days, personal leave days, and emergency leave days taken by Coughlin after the accident were no greater than those taken by him prior to the accident. He subsequently worked as a travelling salesman and also sold insurance.

During the trial, Coughlin testified of his aspiration to work as a carpenter although he had never actually been a carpenter and never earned any money doing carpentry. He was not permitted to introduce the testimony of a Lake County carpenter on how much money he had made due to lack of sufficient foundation.

## ISSUES

1. Was the verdict of $25,000 in damages, but neither permanent injury, nor sixty days or more of disability, inconsistent?

2. Did the trial court err in not submitting to the jury the question of whether the plaintiff met the $4,000 in medical expenses threshold?

3. Did the trial court err by refusing to admit the testimony of a Lake County carpenter on how much he had earned?

## ANALYSIS

Before an injured person covered under the No-Fault Act can recover noneconomic loss in a tort action, the tort thresholds of the Act must be met. The plaintiff must carry the burden of proving $4,000 of medical expenses or an injury producing a disability of sixty days or more, a permanent injury or disfigurement, or death before he can sue. Minn.Stat. § 65B.51, Subd. 3 (1982); *Marose v. Hennameyer*, 347 N.W.2d 509 (Minn.Ct.App.1984). If the threshold requirements are not met, no recovery may be had.

■■■ 1. A jury verdict must be manifestly and palpably contrary to the evidence before it will be overturned. *Templin v. Crestliner, Inc.*, 263 Minn. 149, 116 N.W.2d 178 (1962). It will not be overturned if evidence reasonably tends to support it. *Kuehl v. National Tea Co.*, 310 Minn. 48, 245 N.W.2d 235 (1976). A jury verdict may be overturned only if no rea-

sonable mind could make the findings the jury did. *Belden Porter Co. v. The Kimball Co. Inc.*, 303 Minn. 98, 226 N.W.2d 310 (1975). An appellate court must reconcile special verdict answers if possible. *Reese v. Henke*, 277 Minn. 151, 152 N.W.2d 63 (1967). An inconsistent special verdict must be overturned. *Carufel v. Steven*, 293 N.W.2d 47 (Minn.1980). The evidence as a whole must be viewed in the light most favorable to the verdict, and if the special verdict answers can be reconciled on *any* theory, the verdict must stand.

Here the jury found Coughlin had sustained damages as a result of an accident almost three years ago in the total amount of $25,170. Of that amount, $4,170 represented Coughlin's income loss for three years, and $3,200 were stipulated medical costs.

Appellant indicates that the case of *Carufel v. Steven*, 293 N.W.2d 47 (Minn.1980) supports his position. *Carufel*, however, is not contrary to respondent's position. In *Carufel*, the jury found damages in the amount of $25,000, but also found that the plaintiff had not received any permanent injury. The testimony in *Carufel* was much different than that in the instant case. In *Carufel*, the plaintiff's physician indicated that plaintiff had suffered a twenty percent permanent disability. The defense presented medical testimony which indicated that plaintiff had psychological problems which were the cause of her continuing pain. The defense physicians testified that the plaintiff's psychological problems "could be cured with the appropriate treatment." *Id.* at 48. The Minnesota Supreme Court interpreted the testimony as indicating that plaintiff, at the time of trial, had not recovered from her injuries. The primary conflict in the testimony was "as to whether plaintiff's injuries *would be* permanent or whether she *would* fully recover." *Id.* (emphasis supplied).

The primary conflict in the medical testimony in *Carufel* was as to whether the plaintiff's problems would resolve themselves in the future. *Carufel* involves factually dissimilar medical testimony and can-

not be considered as authority for the proposition that a finding of damages and a finding of no permanent injury are always irreconcilable. In the instant case, the testimony was in direct conflict as to whether there was a permanent injury *at the time of trial.* The direct dispute in the testimony was whether the appellant had fully recovered at the time of trial or had suffered any disability for sixty days or more.

■ The theories presented were very different from those presented in *Carufel.* Here, the defense's expert testified that the plaintiff had been injured, but that the injury was not permanent; that, in fact, there was no disability even at the time of trial. The plaintiff's expert testified the opposite. The jury's verdict fits squarely with the defense's theory: there were general damages of $25,170 (less special damages), but no permanent injury. The jury accepted the defense's theory and rejected the plaintiff's theory. There was no inconsistency in the verdict as there was in the unique facts of *Carufel.*

Coughlin had a full opportunity to present his case to the jury. Coughlin had the burden of establishing that the tort thresholds set forth in Minnesota Statutes § 65B.51, subd. 3 (1983) had been met. There was a conflict in the testimony between the doctors and clearly the jury believed the testimony of one, as they were free to do, and disregarded the testimony of the other. The jury answered the special verdict questions, finding no permanent injury and no disability for sixty days or more.

■ Such an award, however, does not preclude a jury from making a finding that Coughlin had suffered some temporary general damages as a result of the accident. Coughlin does not claim that one must suffer a permanent injury or disability for sixty days or more in order to have suffered some general damages. Nor does Coughlin argue that it is the *amount* of the general damages award which mandates a finding of permanent injury or disability for sixty days or more. In fact, in this case, under the special verdict form,

the jury was free to award whatever amount it felt was reasonable for some temporary general damages. It would, however, be better practice for the trial court to submit the threshold questions first and, if not met, instruct them not to answer any questions on general damages.

In light of the testimony, the verdict is not irreconcilable as a matter of law and must be allowed to stand.

2. One of the stated purposes of the No-Fault Act is to prevent litigation over automobile accident claims. Minn.Stat. § 65B.42(4) (1982). As such, the No-Fault Act substitutes first party insurance as the remedy for the majority of personal injury claims. The tort thresholds represent a safety valve for the victim who is so severely injured that the no-fault insurance limits are so inadequate as to be unjust. Thresholds are established to reserve only the more serious personal injury cases for third party litigation.

The language itself, "paid, payable or payable but for an applicable deductible," indicates that the legislature intended to measure the seriousness by the reasonable medical expenses incurred in the past rather than the future. Minn.Stat. § 65B.51, Subd. 3(a)(3). As Professor Steenson notes, "[The statute] precludes consideration of future medical expenses in computing the tort threshold." Steenson, Minnesota No-Fault Automobile Insurance 161 (1982).

■ The plaintiff stipulated that at the time of trial, his medical expenses were only $3,200. He did not meet the $4,000 medical expenses threshold. The trial court properly refused to allow him to compute future medical expenses into the threshold amount.

■ 3. Coughlin complains that the testimony of an "expert" and himself relating to Coughlin's expected earnings as a self-employed carpenter were improperly excluded. Expert testimony is to assist jury in reaching its conclusion. Minn.R. Evid. 702. As noted in the comments to Rule 702:

The admissibility of expert opinion has traditionally rested in the discretion of the trial court. This discretion is primarily exercised in two areas:

1. determining if an opinion can assist the trier of fact in formulating a correct resolution of the questions raised; and

2. deciding if the witness is sufficiently qualified as an expert in a given subject area to justify testimony in the form of an opinion.

There will be no change in existing practice in this regard.

*Id.* committee comment—1977, *found in,* Minnesota Rules of Court 340 (West 1984), *see Gardner v. Coca-Cola Bottling Co.,* 267 Minn. 505, 127 N.W.2d 557 (1964).

In this case, the trial court was presented with a school teacher who had never been a carpenter, never earned any money as a carpenter, was willing, able, and would prefer to be teaching, and who sought to introduce an experienced, established carpenter's testimony about what the experienced carpenter's earnings were. The connection between the experienced carpenter's earnings and the possible earnings of the plaintiff as a carpenter was so nebulous that the trial court refused to allow the testimony. Implicitly the court found that the opinion would not help the jury. The court did allow the plaintiff to testify about his aspirations to carpentry and what he might make. In each instance, there is a total lack of foundation as to Coughlin's potential earnings as a self-employed carpenter. Coughlin is a school teacher and the evidence is clear his employment as a school teacher was not affected by his injuries. Further, his opportunities as a school teacher were terminated because the student body has declined. He wanted to continue his career as a school teacher, and had sought employment as a school teacher since his layoff.

The excluded testimony of the "expert" and Coughlin would necessarily be based solely on nebulous and undefined assumptions regarding Coughlin's skills and opportunities in self-employed carpentry business, and any opinion heard on this type of

foundation would be purely speculative. This was not an abuse of discretion.

## DECISION

There was a clear conflict in the testimony as to whether appellant had suffered a disability for sixty days or more or a permanent injury as a result of the accident of January 15, 1981. The jury had the opportunity to hear all of the evidence and to weigh that evidence in making its decision. The jury verdict is not contrary to all of the evidence and is not irreconcilable with the award of general temporary damages. The jury verdict should be allowed to stand.

Further, Coughlin stipulated that his medical expenses at the time of trial were $3,200. Medical expenses not yet incurred may not be included under Minnesota Statute § 65B.51, Subd. 3(a)(1) for the purpose of establishing the medical expense threshold of $4,000. It was not error for the trial court to refuse to submit this issue to the jury.

The testimony regarding Coughlin's opportunities as a self-employed carpenter was without any foundation in the evidence. No evidence of appellant's experience, past earnings, or opportunities in the field was presented. Under the circumstances, it was not error for the trial court to exclude such testimony as without foundation and as pure speculation.

The jury verdict was reached after a full and fair trial and must be affirmed in all respects.

Affirmed.