Jerry K. BRUNSOMAN, Respondent,

v.

LEXINGTON-SILVERWOOD, Appellant.

No. C3–85–1727.

Court of Appeals of Minnesota.

April 15, 1986.

Review Denied June 13, 1986.

Robert F. Collins, Minneapolis, for respondent.

Donald G. Clapp, St. Paul, for appellant.

Heard, considered and decided by RANDALL, P.J., and PARKER and FOLEY, JJ.

## OPINION

RANDALL, Judge.

Appellant Lexington-Silverwood, a Minnesota limited partnership, appeals from judgment entered after a bench trial in favor of respondent, Jerry Brunsoman, for breach of contract.

## FACTS

In a contract for deed dated June 30, 1982, appellant, through its general partner Douglas Seltz, agreed to purchase respondent's condominium located in Winter Park, Colorado. Appellant agreed to assume a $25,000 promissory note respondent owed to Silverado Development (the developer of the property), pay $15,000 as a down payment, and assume the outstanding mortgage. The down payment was paid by a ninety-day promissory note, signed by Seltz, for $15,000. The parties agree that the note also required appellant to reim-

burse respondent for mortgage payments respondent made after June 30.[1] Annual payments of the balance of the purchase price were provided for. Appellant agrees that he has made no payments on the promissory note. After a bench trial the court awarded damages under the promissory note, finding appellant owed respondent $15,000 plus mortgage payments of $1,174.99 each for July through November, 1982. The trial court denied appellant's motion for a new trial.

## ISSUES

1. Did the trial court err by refusing to reform the contract?

2. Did the trial court err by not ruling that the parties rescinded the contract?

3. Did the trial court err by sustaining respondent's objection to certain cross-examination?

## ANALYSIS

### I.

*Reformation*

Appellant claims that (1) the contract for deed and the promissory note were made under a mistake of fact and they should therefore be reformed and (2) pertinent terms and conditions were omitted by clerical error and the instruments should therefore be reformed.

A written instrument can be reformed only if

(1) there was a valid agreement between the parties expressing their real intention; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to the mutual mistake of the parties or a unilateral mistake accompanied by fraud or inequitable conduct by the other party.

---

1. The note states:

$15,000.00  6/30/82

 90 days after date I promise to pay to the order of Jerry K. Brunsoman $15,000 at St. Paul.

 Value received with interest at the rate of 15 percent per annum. Also added to the principal

due is all payments on Unit 124 Silverado Condominiums II.

  Lexington Silverwood by
  /s/ Douglas Seltz GP

*Nichols v. Shelard National Bank,* 294 N.W.2d 730, 734 (Minn.1980).

Seltz was respondent's attorney and financial advisor from early 1981 through November, 1982. Respondent approached Seltz in March, 1982, proposing to sell Seltz his condominium. Respondent needed cash due to the liquidation of his dental practice partnership, and the developer had called in the $25,000 demand promissory note. At the time, appellant was purchasing condominiums in Colorado for investment purposes. Initially Seltz was reluctant to purchase respondent's condominium, but he eventually negotiated a written contract with respondent.

Seltz claims that he told respondent that he would purchase the condominium only if respondent purchased five units of Lexington-Silverwood partnership at $15,000 per unit, and only if the term of the $25,000 note to Silverado could be extended. He claims that these terms were erroneously omitted from the contract for deed and promissory note because the documents were drafted hurriedly. Alternatively, Seltz seeks reformation of the contract for deed, claiming that these terms were agreed to and that neither the contract for deed nor the note reflect the parties' agreement.

At Seltz' insistence, the parties met hurriedly on June 30 because Seltz had determined that purchase of the condominium would not make business sense unless appellant could obtain seven months of depreciation in 1982. The documents were hurriedly drawn up to ensure the depreciation should the deal ultimately go through.

At trial, respondent testified that he never agreed to the additional terms and that it would not have made sense for him to agree to the terms because he would have been required to make a cash outlay of $75,000 at a time when he was trying to increase his cash flow.

■ The trial court found that respondent did not agree to the disputed conditions. This court will not reverse unless the finding is clearly erroneous. *Preferred Risk Mutual Insurance Co. v. Anderson,* 277 Minn. 342, 152 N.W.2d 476 (1967). Because the finding is supported by Brunsoman's testimony, we hold that the trial court made no clear error. The written contract for deed and promissory note contained the agreement of the parties, and the trial court did not err in refusing to reform the written contract.

## II.

### *Rescission or Abandonment*

■ Appellant claims that, by mutual agreement, the parties either rescinded or abandoned the contract for deed and promissory note. The party claiming rescission must prove it by clear and convincing evidence. *Desnick v. Mast,* 311 Minn. 356, 365, 249 N.W.2d 878, 884 (Minn.1976). For a court to approve rescission, it must find the acts of the parties to be inconsistent with the existence of the contract. Generally, both parties must intend to rescind the contract. *Minnesota Ltd., Inc. v. Public Utilities Commission of Hibbing,* 296 Minn. 316, 318, 208 N.W.2d 284, 285 (1973).

■ Appellant claims that respondent rescinded the contract in early November, 1982, when, supposedly at respondent's request, Seltz presented respondent with a financial analysis which indicated that respondent should retain the condominium because of the tax advantages. Respondent testified that he never requested the financial analysis and did not agree with Seltz' assessment that he should keep the condominium. Respondent testified repeatedly that he needed cash to invest in a different project in which he was interested. In reviewing the record, we find respondent's testimony was consistent with an intention to complete the sale to appellant and inconsistent with appellant's claim of mutual rescission. Moreover, respondent testified that Seltz made a unilateral attempt to abandon the contract for deed after the two had a personal argument in November, 1982.

The trial court found that "the parties did not mutually agree that Brunsoman

would cancel the contract and retain the Colorado condominium. * * * Seltz * * * terminated the attorney-client relationship with Brunsoman and abandoned the defendant's obligations under the contract for deed." We defer to the fact finder's resolution of the conflicting testimony on this point and find no error. In the absence of mutual agreement there can be no rescission.

Appellant also claims that respondent either rescinded or repudiated the contract for deed by signing, with a realtor, a listing agreement which did not list the contract for deed among the encumbrances on the condominium. We agree with the trial court that, because the listing occurred after appellant's abandonment of the contract in December, 1982, it was not relevant. The listing merely showed respondent's effort to mitigate damages.

The trial court found that respondent "neither paid the $25,000 note nor made the mortgage payments" on the condominium. This shows that respondent acted as though the contract for deed and the promissory note obligated appellant to make the mortgage payments. Appellant correctly points out in his reply brief that respondent testified, without contradiction, that he made the mortgage payments for July through November, 1982. Therefore, the trial court erred in finding that respondent made no mortgage payments. However, the error was not material.

The fact that respondent made certain mortgage payments does not mean that he intended to abandon the contract. Conduct indicating abandonment must be "positive, unequivocal, and inconsistent with the existence of the contract." *Desnick v. Mast*, 311 Minn. at 365, 249 N.W.2d at 884. The promissory note contemplated that respondent would make the July, August, and September mortgage payments and then be reimbursed for them. Respondent's making the mortgage payments after the 90 days contemplated by the promissory note, when appellant had failed to pay them, is not inconsistent with respondent's claim that there was an enforceable

contract between appellant and him. Respondent had a right to protect his vendee's interest in the property while attempting to get appellant to complete the sale between them.

Appellant claims that written notice to the purchaser under Minn.Stat. § 559.21, subd. 2 (1984) is the exclusive method of terminating a contract for deed, and that because respondent failed to give appellant written notice, respondent cannot sue for damages under the contract for deed. We do not address the merits of this claim because the trial court awarded damages on the promissory note, not for breach of the contract for deed. Appellant remains liable on the note, regardless of the status of the contract for deed. *See Novus Equities Corporation v. EM–TY Partnership*, 381 N.W.2d 426 (Minn.1986). This is so because, first, respondent never canceled the contract; and second, because the contract for deed stated that the $15,000 was a down payment, and the parties never disputed that the promissory note was given as a down payment. We affirm the trial court's award of damages under the promissory note.

### III.

#### *Evidentiary Ruling*

The trial court precluded appellant from cross-examining respondent on his state of mind at the time he executed the listing agreement for the condominium, ruling that the testimony was irrelevant. Appellant claims that the evidence is relevant to respondent's alleged rescission of the contract for deed and promissory note because the listing agreement did not indicate the contract for deed as an encumbrance on the property. Respondent argues that his own intent in February was irrelevant because appellant had abandoned the contract by early December, 1982. Respondent argued that he should be allowed to search for another buyer after a clear default by appellant without forfeiting any rights under the contract that he claimed appellant breached. We agree. Limiting

the scope of cross-examination is within the trial court's discretion and we will reverse only for an abuse of that discretion. *Murray v. Walter*, 269 N.W.2d 47, 49 (Minn. 1978). The record reveals no error.

## DECISION

The trial court did not err in refusing to reform the contract. The trial court did not err in holding that the parties did not rescind the promissory note or in its award of damages under the promissory note. The trial court did not err in sustaining respondent's objection to cross-examination of respondent about his intent when he executed the listing agreement.

Affirmed.

FOLEY, Judge (dissenting).

I respectfully dissent. It strikes me that the court's denial of appellant's right to cross-examine plaintiff concerning his state of mind at the time he executed the listing agreement for the condominium in February 1983, was reversible error.

Whether the appellant had unilaterally abandoned the contract or the parties had *mutually* abandoned the agreement was crucial to the decision. The trial court found abandonment by appellant without knowing or permitting inquiry to establish how respondent viewed the status of the condominium when he offered the same for sale in February 1983. No other property interests than respondent's are reflected in the listing agreement of February 1983. How that came about and what it was intended to mean was material evidence that should be considered more than just a routine trial ruling. The answers on cross-examination might well have dictated different findings on abandonment. The inquiry on cross-examination should have been permitted from the standpoint of how the respondent viewed the situation in February 1983 when listing the condominium for sale and not from the standpoint of how he viewed it at the time of trial.

A new trial should be ordered. The rule followed in Minnesota is stated in *Kellett v.*

*Wasnie*, 261 Minn. 440, 449–50, 112 N.W.2d 820, 826 (1962):

> [W]here the case is close, the inclusion or exclusion of material testimony is important in balancing the respective positions of the parties. The evidence adduced at the trial in the instant case was sharply conflicting, with each side offering evidence which, if believed by the jury, might have influenced the outcome. All admissible evidence ought to be received in order that the triers of fact may determine the outcome in justice to both sides as nearly as can be. * * * Where the case is close on the facts the rejection of competent and material evidence is reversible error.

*See also Riewe v. Arnesen*, 381 N.W.2d 448 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. March 27, 1986).